Good morning, your honors. May it please the court. Alyssa Bell on behalf of Mr. Kimbrew. And I'd like to reserve three minutes of my time for rebuttal. Certainly. Thank you, your honor. I'd like to begin by explaining why the government adduced insufficient evidence that Mr. Kimbrew undertook official action in this case. Now, the government has argued that Mr. Kimbrew undertook at least five official actions. But it's, of course, impossible to know which of those actions form the basis of the jury's verdict. And that's because the district court instructed and the government argued repeatedly that no unanimity was required, that any official action, any one of those five, could underscore their verdict. And then the jury did not make any special findings and returned a general verdict. And as a result of that general verdict, under the Supreme Court's precedent in Zanvi Stevens and this court's precedent in Giozo's, it must be set aside if any one of those official actions was insufficient to support that verdict. And one of those alleged actions in this case was plainly insufficient. The issuance of a permit to Green Legends was not a matter that was either pending, to quote the statute, or which may by law be brought before Mr. Kimbrew in his capacity as a public servant or before any of the other public officials over whom he claimed to have some influence. And there are two cases that most clearly compel this conclusion. The first of those is McDonald. The court there addressed the terms pending and may by law be brought and explained in the following, I quote, Those terms convey something within the specific duties of an official's position, the function conferred by the authority of his office, and something, quote, that can be put on an agenda, tracked for progress, and then checked off as complete. Well, the statutory language is a little bit broader than that. It says which may at any time be pending or which may by law be brought before any public officials. So how does that language tie into the facts of this case in your favor? Well, the issuance of a permit to Green Legends clearly fails those tests. It was not within the specific duties of any public official to decide whether or not to issue Green Legends a permit. Issuing the permit? I'm sorry, Your Honor? Who was to issue the permit? There was no permitting process in the city of Compton. It was impossible to issue Green Legends a permit. It simply was not. There is evidence, at least Kimbrough represented, that at some point the city of Compton is going to consider permitting a small number of dispensaries to operate. And so that's the promise that he made to the undercover agent that he would intervene in order to ensure that Green Legends would be one of those small dispensaries that would be allowed to operate. Isn't that sufficient? No, Your Honor, it's not. The government has argued throughout this case that Mr. Kimbrough, the extent and nature of Mr. Kimbrough's promises, created a reasonable impression that he could make good on them and that a reasonable belief is sufficient for liability under Section 201. But that's not the case, and the government has somewhat paradoxically abandoned that position, I assume, on appeal in saying that the proposed jury instruction included an inapposite reasonable belief element. So the government is conceding that that is, in fact, inapposite. So here Mr. Kimbrough did make exactly the promise that Your Honor recited, but it was a promise to take an action that did not qualify as official action because it was simply not a matter pending or which could by law be brought before Congresswoman Janice Hahn, over whom he claimed to have some influence, before the FBI or before the city attorney of Compton. I think Valdez is a case that underscores this conclusion as well. In that case, the metro police officer who was the defendant had queried an official database and in exchange for several hundred dollars had provided information about private citizens to an informant. And the court said to constitute an official action, the matter must have surfaced to some degree. It's not sufficient that the matter be hypothetically capable to be brought before that public official at some further time. And at that time there was no pending investigation to which these queries related in any respect. Just to be clear, if the city had a permitting scheme and the evidence was that Mr. Kimbrough said, I'm going to have the Congresswoman call the permitting official and urge that person to grant a permit, would that be sufficient in your view? Well, the answer to that is twofold. Under the argument that I'm making right now, yes, it absolutely would be sufficient. And there is a narrow point that can form the basis of this court's decision, and that's a proper construction of those two statutory terms in the definition of official act, pending and capable and which may by law be brought. We have also made a broader argument here. And I'm happy to address that broader argument, but I do just want to make sure the court does have my point on the narrow construction. And Valdez did say that the statute would lack a limiting principle and would not pass constitutional muster if it was possible to turn liability on a hypothetical, future, speculative official action which could possibly be brought before a public official, but which was not then upon him or her. As to our broader point, we have argued that the federal bribery statute reaches only conduct that the public official has some ability to influence. And this comes from a series of cases, Muntin, Birdsall, Blunden, all of them look to the sphere of that public official's influence, what is in his or her official capacity, and ask, is the promise within that sphere or not? Is the promise to issue a permit something that that official can accomplish or not? And in this case, the promise Mr. Kimbrough made was to exert influence over public officials. So our view is that liability should hinge on whether he could make good on that promise or not. I thought our cases, and in particular May Chen and a number of other cases, had established that if the official falsely claims to have authority to do something and manages to convince someone to pay him money in exchange for a false promise to do something that, in fact, he doesn't have authority to do, that that still is a violation of Section 201, isn't it? No, Your Honor, I don't think that's the case. I think the cases actually stand quite for the opposite proposition, that the public official must make a promise to do something that he has the power to accomplish, that is somehow within his official purview. But again, this is an argument that is a broader construction. I think it is somewhat more of an open question. We're asking for the cases to be read in our favor in a particular way, but it is not a question that the court must reach. Instead, the real question here, the fundamental question that should lead to an insufficiency finding, is that the issuance of a permit to Green Legends was not official action. Because there wasn't a permitting scheme. Precisely. It was not something that could be brought before any public official. But the city, you don't dispute that the city had, I mean, the authority to create one, right? Do you consider that to be relevant to the analysis at all? Well, I think that the en banc panel of the D.C. Circuit was quite right in Valdez, that the statute would be overbroad and would lack a limiting principle if it could reach those kind of hypothetical scenarios. That it was within the power, perhaps, to create a system, but the issue had in no way surfaced, as the court put it. To extend liability to that extent simply is beyond constitutional bounds, where there must be notice. What is your limiting principle that basically gives weight to the phrase which may be brought before any public official? You're saying that, number one, the process has to be in place, or at least it has to have surfaced. And what does that mean, that the process had to have surfaced? Well, Valdez does give- Active discussions going on, that there's going to be dispensaries that will be permitted? Valdez does give some specific examples. For example, if you had a dispute before the National Labor Relations Board, that there must be an active live dispute, and that there must be some concrete action that could be taken in favor of one party or another to have that level of concreteness. McDonald's suggests a limiting principle- But considering putting a permitting process in place is concrete, so if the test is concreteness, issuing a permit seems fairly concrete to me. Issuing a permit absolutely would be concrete. The problem is there was no permitting process in place. And perhaps I think the closer question is, if what's before the city at that time is the question of whether to put a permitting process in place or not, perhaps that would be a closer question. And the discussion that there will, in the future, be consideration given to issuing a limited number of permits, that discussion isn't relevant because why? That discussion was not, in fact, a discussion. What Mr. Kimbrough was doing was creating an impression of something. There was no actual evidence that there were discussions in the city of Compton about creating a permitting process. Had those discussions actually been underway, maybe this would be a different case. But, again, the nature and extent of Mr. Kimbrough's deception might be relevant to liability under a different statutory scheme, such as Hobbs Act bribery under color of official right, which is the Freeman case that the government has, again, repeatedly tried to import into Section 201 liability. But it simply is not relevant to Section 201 liability. And if I could just add, McDonald's does provide or at least suggest a limiting principle, an item that can be put in an agenda, tracked for progress, then checked off as complete. And that simply wasn't the case with an issuance of a permit to Green Legends. It could not be put on an agenda, tracked for progress, or checked off as complete before any public official. Did you request an instruction telling the jury that they had to be unanimous on a particular one of the five alleged official acts? I don't believe that the defense requested that instruction below, nor do I believe that it would have been an accurate statement of the law. But you began, I thought, by saying, by emphasizing that the jury hadn't been asked to find a particular. Yes. The emphasis there is on the fact that the jury returned a general verdict. If the jury had been asked to make specific findings, then this court could know concretely whether this one insufficient official action had formed the basis of the jury's verdict. And if it had, then the verdict would be insufficient. If it hadn't, then the verdict would be upheld. In this case, because it's a general verdict, the precedent says where it could have rested on a legally insufficient ground, it must be overturned. There are no questions about this issue. You wanted to save some time. I do, and I will sit down. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Lindsay Grudatz on behalf of the United States. I'd like to start where Judge Miller just left off regarding unanimity. It was both a unanimity instruction was given by the court, that's at ER 463, and it was also a joint proposed jury instruction at ER 74. The jury was instructed that they had to agree on which official act, given that there were five in this case. I'd like to move now to defense counsel's impossibility argument. Judge Wynn is correct that 201 states that things that may become pending. In fact, 201 even says things that could have been brought. In this case, there's no question that the issuance of a permit is the type of formal governmental action Congress envisioned and that McDonald said would constitute formal government action. Just because green legends might not have gotten a permit doesn't mean that they couldn't have applied and been rejected. I mean, that is the type of government action in this case. And, in fact, tons of cities issue marijuana permits in the state of California. That is no question, and permitting is an official government act. And I'd like to turn now to the record in this case. The defendant's statements in recorded meetings with the undercover agent are evidence. The defendant said that although there was. As I understand Ms. Bell's argument on behalf of Mr. Kimbrough is that he essentially made a false promise because there's no indication or no evidence that the city of Compton was even considering allowing a limited number of dispensaries to be in operation. So he essentially lied to the undercover agent when he said that permitting process would be considered and that green legends would be a part of that, assuming that this bribe is paid. And so, therefore, that's too speculative to constitute an official act. What's the government's response to that? That was defense counsel's argument on how the jury should interpret the evidence. As it stands at trial, there were these recorded statements where the defendant said behind the scenes, the city of Compton's discussing allowing five marijuana dispensaries to be permitted in the future. And if you give me $5,000, I can put my thumb on the decision-making scale and make sure that you're one of the five. The defendant did not testify at trial and say that his statements were false. It's merely argument that they were, in fact, false. The state of the record is that defendant's own recorded statements were that there were these discussions ongoing. And the fact that the defendant has argued that this was just mere puffery doesn't make it so. And that's not an interpretation of the evidence that the jury had to credit at trial. Going forward. Under California law, could the dispensary open in Compton without a permit? To be honest, I'm not as familiar with state permitting regulations, but I believe that there had to be a city permit. And that's something that, regardless, even if it didn't, that is something that the defendant said in these recordings was something that was in process and that was happening. And that is the state of the record. And the jury's interpretation of that evidence and crediting the defendant's recorded statements, that is something that this court gives deference to in terms of the jury's interpretation of the facts at trial. Can I just ask, what is your view on the legal question of if an official falsely promises, I will do this thing which is within my authority, but it's actually not within his authority? Impossibility, I'll make it clear. Impossibility is not a defense to a 201 bribery charge. There is no case defendant cites that says that. And it flies in the face of what the Supreme Court has said with McDonnell in terms of the defendant. Under 201, it's a crime when the defendant merely solicits a bribe. The defendant, as McDonnell said, doesn't have to take any action. Doesn't even intend to have to take action. There is simply no case that says that impossibility, the fact that the defendant might not have been successful in getting a permit, that that is a defense. That's not what Congress intended, and that's not what McDonnell said. What evidence is there in the record that there was not a permit process in the city of Compton? The defense called the Compton city attorney who testified that at present, I believe he testified that at present there wasn't a permitting process. One thing I would like to say about the Compton city attorney's testimony is that the defendant in the recorded meetings with the UC said, I've got a lot of public officials in my back pocket. One of those being the Compton city attorney. And then the Compton city attorney testified as a defense witness and said there wasn't currently a permitting process. The jury did not have to credit that witness's testimony. The jury in this case is perfectly reasonable in concluding that the defendant was actually being truthful when he was recorded without being aware of it, saying that behind the scenes there is talk about allowing five marijuana dispensaries to be permitted in Compton. So factually speaking, in terms of the sufficiency of the evidence argument, I'd like to say one more thing. So one, impossibility is not a defense. Two, the facts are not that it was impossible. That is an interpretation of what the facts were at trial, but that's not the only conclusion the jury could have reasonably made. And one other thing I want to say in this case is that there were two matters charged in the indictment that were argued at trial and that there was evidence of. That the defendant promised to take official action with regard to not just permitting, but also the shutdown of the shop. And the defense has not made any argument that there's insufficiency with regard to the shutdown of the shop. And one of the things I want to make clear is that from counsel's argument just now, the defendant seems to be misrepresenting the state of the law regarding general jury verdicts and alleged insufficiency claims. And I want to make this clear. The controlling rule regarding such claims is that where only one possible basis of conviction is unsupported by sufficient evidence, a general verdict must be upheld. And that's Griffin v. United States, 502 U.S. 46. In such cases, the court presumes that the jury reached its verdict on the basis of a correct assessment of the evidence. Now, Griffin addressed the case's defendant's sites and squarely held that they are limited to situations where one of the possible bases of convictions was either unconstitutional, not applicable here, or illegal, also not applicable here. So moving on, I'd like to address some of other defense counsel's arguments. Counsel cites this case Valdez, which held that merely querying a governmental database does not constitute an official action. The government has no disagreements there. That's not something where just querying a database shows that there's going to be action taken on a matter that is pending or could become pending. That is wholly separate and apart from what the defendant promised to do in this case, which was exert his influence to try to get the shop a permit and also try to prevent its shutdown. Beyond that, I'd like to talk about the reasonableness. I'm a little unclear, but defense counsel seemed to say that the government has moved beyond or abandoned something regarding reasonableness, and I'd like to address that. That argument comes in the context of the ineffective assistance of counsel claim. So basically, there, defense counsel requested and the court instructed that, quote, it must be, and this is at ER 465 where the court instructed this, it must be reasonable under the circumstances for a payer to have the impression the official possesses the power to bring about official action, even if the official does not have the actual power to do so. It sounds similar to what the government requested as its instruction on this issue, but it's not. What the government requested, and this is at Excerpt of Record 90, was that specifically laying out for the jury that the government does not need to prove that the defendant had actual or final authority over the end result sought by the bribe payer so long as it would have been reasonable to conclude under the circumstances that the defendant had the influence, power, or authority over a means to the end sought by the bribe payer. Not that it would have been reasonable in every situation that the government would have been forced to prove that the defendant could have made good on his promise, and they're different. And the one thing I want to say about the ineffective assistance of counsel claim is that this was a jury instruction that the defense requested, and it was clearly strategic. Within 30 seconds of defense counsel's opening statement at trial, defense counsel was saying that there was no bribe. Yes, everything that you just heard the government say about the recordings, yes, he took money. Yes, it was bad. Yes, the threats, gosh, that sounded really terrible. But legally speaking, at the end of this trial, you're not going to be able to find bribery because it wouldn't have been reasonable under the circumstances to conclude that the defendant could have made good on any of his promises. The defense's request for this jury instruction was clearly strategic because the defense was faced with a very difficult situation. There were recorded audio and video recordings of the defendant threatening to shut down the shop, have it shut down, and demanding this bribe. So of course this was a strategic decision by defense counsel at trial, and that's even if the court reaches the merits of that in this case because, frankly, IAC claims or ineffective assistance of counsel claims are normally handled through a habeas petition. So that issue regarding the reasonableness of this instruction does not even need to be addressed by this court at this time. I'm happy to continue on if the court has further questions regarding sufficiency of the evidence or impossibility or any other questions on this case. It doesn't appear we have any questions. Thank you very much. I appreciate the time. Thank you. Let me begin by addressing the issue of general verdict. So I apologize for having muddied the waters by citing unanimity because the issue really is the general verdict, and the jury here did not make any kind of finding  as to which of the official actions that the government claimed Mr. Kimbrough undertook he had, in fact, undertaken. What's your answer to Griffin? Well, so Griffin says that in cases of unconstitutional or illegal verdicts, the general verdict must be set aside, and that's exactly what we're arguing we have here, which is an illegal verdict. It's one that's legally insufficient and does not fit within the statutory framework, not anything otherwise. So I think those cases, Giozo's and Zanthi-Stevens, are squarely applicable. And why is it? I mean, I understood your argument to be really one of evidentiary sufficiency. I mean, like, if there had been evidence, we had this discussion, if there had been evidence of a permitting scheme that was sufficient in your view, then that would be a legally sufficient basis for conviction. So I understood your argument to be really one about the sufficiency of the evidence. The argument really is one of statutory construction. It turns on whether when the court interprets the terms pending and which may by law be brought, the court requires those to have an actual basis in fact, the reality of what was in that. Why can't the basis in fact be Kimbrough's own representations that behind the scenes there were considerations given to allowing a small number of dispensaries to operate in the city? In order for the jury to have credited Mr. Kimbrough's testimony there, they had to have found that Craig Cornwall, the city attorney, was lying. And while I understand that all reasonable inferences must be drawn in the government's favor on a sufficiency of the evidence standard, that simply was not a reasonable inference to draw in the government's favor. The government never attacked Craig Cornwall's credibility. His testimony was not impeached in any way. And he testified that there was... He said that there was no permit process currently in place. What was his testimony on the behind the scenes considerations? He testified that basically, I'm sorry, that dispensaries were categorically barred. That was simply the state of affairs. There was no wiggle room behind the scenes as to whether they would at some point be allowed in the future. They were categorically barred. He also testified that he made the exclusive decision whether to shutter Green Legends and that he did not receive input from Mr. Kimbrough, and there was nothing that Mr. Kimbrough could have done to effectuate the cessation of that process. Yeah, well, but then that seems to be a credibility contest at that point, doesn't it? Well, simply under these circumstances where the government did not even attempt to impeach Craig Cornwall's testimony, it simply is not a reasonable inference that could be drawn in the government's favor. What about Kimbrough's promise to use his influence to make sure that the dispensary could open? His promise to make sure it would not be shut down? Not shut down. Our argument there, and we did brief this quite considerably, so I know that I don't have much time to address it, but our argument there is that Mr. Kimbrough had... to do anything to make sure that the dispensary would not be shut down. Wasn't he agreeing to use his leverage with the city attorney to make sure that it wasn't shut down? Did he make that promise? He certainly did make several promises to use his leverage, but there simply wasn't any evidence that he could do any of that. And the government's theory at trial, and this is... but the theory at trial was that it was reasonable to believe what Mr. Kimbrough said and that the reasonable impression he created was sufficient for liability. And now the government seems to be reversing course and saying that, in fact, that is no longer their argument. But at trial, that was their argument, and that was the basis of the conviction in this case. In fact, the district court, in overruling the Rule 29 motions, cited United States free freemen, which is a Hobbs Act case, imported that legal standard, and said that because the jury could reasonably have believed that Mr. Kimbrough could accomplish these things, that, in fact, there was no evidence or within his official purview that his conviction should be upheld. You're over time, so unless my colleagues have any additional questions... All right, the matter is submitted.  Thank you, Your Honor. Thank you. All rise. This court, for this session, stands adjourned. Thank you.
judges: Nguyen, Vitaliano, Miller